**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
MAY FLOWER INTERNATIONAL, INC.,

                        Plaintiff,

                -against-

AMOY FOOD LIMITED, AMOY ASIAN FOODS
NORTH AMERICA, INC, CONEXUS FOOD
SOLUTIONS LLC (FORMERLY KNOWN AS
BEST FOOD SERVICES LLC), BEST FOOD
SERVICES, INC., GRAND FOOD SERVICE,
INC. a/k/a GOLDEN CITY FOOD SERVICE,
KND GLOBAL LLC, WEN LIN LIU a/k/a ERIC
LIU, ALLAN ZHIPING CHEN a/k/a ALLAN
CHEN, WEI PENG DAI a/k/a WEIPENG DAI,
BRIAN LIN and "JOHN DOES" 1-10,

                       Defendants
------------------------------------------------------------------X

CIVIL ACTION NO.:

24-cv-4909

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff MAY FLOWER INTERNATIONAL, INC. ("Plaintiff") files this Complaint against defendants AMOY FOOD LIMITED ("Amoy"), AMOY ASIAN FOODS NORTH AMERICA, INC ("Amoy North America"), CONEXUS FOOD SOLUTIONS LLC (FORMERLY KNOWN AS BEST FOOD SERVICES LLC)("Conexus" or "Best LLC"), BEST FOOD SERVICES, INC. ("Best Inc"), GRAND FOOD SERVICE, INC a/k/a GOLDEN CITY FOOD SERVICE ("Grand Food"), KND GLOBAL LLC ("KND"), WEN LIN LIU a/k/a ERIC LIU ("Liu"), ALLAN ZHIPING CHEN a/k/a ALLAN CHEN ("Chen"), WEI PENG DAI a/k/a WEIPENG DAI ("Dai"), BRIAN LIN ("Lin") and hereby alleges as set forth below. Amoy, Amoy North America, Conexus, Grand Food, Liu, Chen, Dai, and Lin are collectively referred to herein as the "Defendants" and individually as the "Defendant."

## NATURE OF THE ACTION

1.      This action arises from fraud and pattern of racketeering activities perpetrated by Defendants. Plaintiff is in the food production, importation, wholesale and distribution business. In order to induce Plaintiff to distribute the mooncake products under the Amoy brand, Defendants made multiple misrepresentations about the mooncakes' manufacturer and place of production. Defendants even used the U.S. registered mark symbol "®" on the Amoy mooncake products to mislead Plaintiff. Defendants successfully defrauded Plaintiff and Plaintiff entered into an exclusive distribution agreement (in the total amount of $1,260,000) with one of the Defendants KND. Plaintiff subsequently paid two checks to KND in the amount of $378,964 and $250,000 respectively. Once Plaintiff realized that the mooncakes were not manufactured by Amoy in Hong Kong, Plaintiff returned the remaining mooncakes to Defendants.

2.      However, even after Defendants received the returned mooncakes, they kept demanding Plaintiff make payment to an invoice in the amount of $520,149. Unable to receive the payment, Defendants sent eight gangsters to Plaintiff's office and warehouses in New York and threatened to beat up Plaintiff's employees and extorted that many bad things would happen to Plaintiff and its employees in the near future if the payment to the invoice was not received. Bad things indeed happened thereafter. Plaintiff's four commercial trucks parked outside of its warehouses were severely damaged (poured sugar into the gas tanks) at night. Plaintiff's general manager's car was damaged and was poured red paint all over the body of the car. On the same day, the front gate of Plaintiff's shareholder's home was poured red paint. Eventually, Plaintiff received an extortion note at its New York office, saying that "May Flower manager and owner, the mooncake money and three activities fee total $600,000. I give you ten days. You should know where to pay. If you don't pay, I will kill you. Feb. 4."

3.     Because of Defendant's fraud and racketeering activities, Plaintiff suffers damages in the amount of at least $1,096,815. Plaintiff also seeks treble damages in the amount of $3,290,445, the costs of the suit and reasonable legal fees.

## THE PARTIES

4.     Plaintiff is a domestic business corporation duly incorporated under the laws of the State of New York with a principal place of business at 56-72 49th Pl., Maspeth, New York, 11379, mainly conducting the business of sales of food, cooking sauces and condiments.

5.     Upon information and belief, Defendant Amoy is a foreign limited liability company duly formed under the laws of Hong Kong, with a place of business at 11-15 Dai Fu Street, Tai Po Industrial Estate, Tai Po, Hong Kong. Upon information and belief, Amoy has a U.S. office located at 4500 Cooper Rd., Suite 305, Cincinnati, OH 45242.

6.     Upon information and belief, Defendant Amoy North America is a domestic corporation duly incorporated under the laws of state of Delaware on February 4, 2019, with a principal office at 4500 Cooper Rd., Suite 305, Cincinnati, OH 45242.

7.     Upon information and belief, Defendant Conexus, formerly known as Best Food Services LLC ("Best LLC") before June 23, 2023, is a domestic limited liability company duly organized and existing under the laws of state of Illinois, with a principal address at 6500 W. 51st Street, Chicago, IL 60638.

8.     Upon information and belief, Defendant Best Inc. is a corporation duly organized and existing under the laws of state of Illinois, with a principal address at 6500 W. 51st Street, Chicago, IL 60638.

9.     Upon information and belief, Defendant Grand Food is a domestic business corporation duly incorporated under the laws of the State of Pennsylvania with a registered office at 1800 N American Street, Philadelphia, PA 19122.

10.     Upon information and belief, KND Global LLC ("KND") is a limited liability company formed in and under the laws of the State of Maryland, with a principal address of business at 10009 Bentcross Dr. Potomac, MD 20854.

11.     Upon information and belief, Defendant Liu is the Senior Sales and Marketing Director of Amoy and Amoy North America and maintains a business address at Amoy North America's principal office.

12.     Upon information and belief, Defendant Chen is the Sales Director of Conexus and maintains a business address at Conexus's place of business.

13.     Upon information and belief, Defendant Dai is a member of Conexus and maintains a business address at Conexus's place of business.

14.     Upon information and belief, Defendant Lin is a representative of KND and maintains a business address at KND's place of business.

15.     The identities of "John Does" 1-10 are not currently known to the Plaintiff. Upon information and belief, they are associated with Defendants and have contributed to Defendants' unlawful activities. Plaintiff will use its best efforts to identify these "John Does", and upon further knowledge and investigation, Plaintiff will amend its pleadings accordingly.

## JURISDICTION AND VENUE

16.     The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, excluding interest and costs, and there is diversity of citizenship between the parties.

17.     Additionally, the United States District Court for the Eastern District of New York also has jurisdiction over Plaintiffs' claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO") statute pursuant to 18 U.S.C. § 1962, 18 U.S.C. § 1964(a) and 28 U.S.C. § 1331 over remaining claims pursuant to 28 U.S.C. §§ 1367(a).

18.     The United States District Court for the Eastern District of New York has venue pursuant to Title 29 of the United States Code §1391(b)(1) and Title 29 of the United States Code §1391(b)(2), as Defendants conduct business within the Eastern District of New York, and the events which are the subject of this action occurred within the Eastern District of New York.

**FACTUAL BACKGROUND**

19.     Upon information and belief, Amoy is manufacturer of food, cooking sauces and condiments in Hong Kong.

20.     Upon information and belief, Amoy has its products widely sold in the U.S. through Amoy North America, intermediary distributors, and representatives.

21.     Upon information and belief, Conexus (was previously known as Best Food Services LLC and hereafter refer to as Best LLC) is an agent and distributor of Amoy and Amoy North America for all their products in the U.S.

22.     Upon information and belief, Defendant Grand Food is a subsidiary and distributor of Best LLC.

**A.  Fraudulent Scheme of Selling the Amoy Mooncakes**

23.     On or about February 23, 2021, Defendant Liu had an in-person meeting with Plaintiff's general manager Min Liu at Plaintiff's office, in which Defendant Liu presented himself as a representative of Amoy and a director of Amoy North America. In the meeting, Defendant Liu told Plaintiff that Amoy was going to launch its first mooncake products this year, that the

moon cakes were manufactured by Amoy and produced in Hong Kong. Defendant Liu further said Hong Kong produced mooncakes had good reputation in U.S. market, and he asked Min Liu whether May Flower wanted to be the exclusive distributor of these moon cakes in the U.S. market.

24.     In or about mid-March 2021, Defendant Liu, together with Defendant Dai, had another meeting with May Flower's Min Liu in her office. Defendant Dai presented himself as a director of Best LLC. During this meeting, Defendant Dai also stated that the mooncakes that they offered for sale were manufactured by Amoy in Hong Kong.

25.     In or about early April 2021, Defendant Liu, Dai, together with Defendant Chen, who presented himself as a sales director of Best LLC, met with Min Liu in her office again. In this meeting, Defendant Liu, Dai and Chen further discussed the details of a potential agreement between Best LLC and Plaintiff for Amoy's mooncake products. Defendant Liu, Dai and Chen assured that the mooncakes offered by them were manufactured by Amoy in Hong Kong.

26.     After the meeting, Defendant Liu sent photos of Amoy's mooncake products and photos of the product packaging to Min Liu on Wechat (a text messaging app). On these photos, Amoy's trademark was displayed together with a symbol of ®, which usually stands for "registered trademark" and is used for trademarks that are registered with the U.S. Patent and Trademark Office.

27.     In addition, during the meetings mentioned above, Defendants Liu, Chen, and Dai represented that the trademark "Amoy" had been registered for mooncake products in the U.S. And the advertisement materials adopted by Best LLC for Amoy's mooncake products in the U.S. market also displayed the Amoy mark with the symbol of ®.

28.     In reliance of the above-mentioned representations and the fact that many of Amoy's products sold in the U.S. (other than the mooncake products) are manufactured by Amoy

6

in Hong Kong and normally products manufactured in Hong Kong have better quality therefore can be sold at better prices, Plaintiff was willing to enter into a purchase agreement with Amoy and Best LLC for Amoy's mooncake products.

29.     On or about April 28, 2021, Defendant Liu, Chen and Dai presented a draft of agreement to Plaintiff. On the said document, KND was named as the seller. When was asked why KND was the seller on the agreement instead of Best LLC, Defendant Liu, Chen and Dai stated that KND was one of the subsidiaries of Best LLC and both KND and Best LLC were distributors of Amoy controlled by the same group of management. It did not raise any suspicion to Plaintiff at that time because it was not unusual in the U.S. food distribution industry that the manufacturers sell their products to intermediary agents or representatives instead of directly to the distributors or retailers.

30.     Therefore, on or about April 28, 2021, Plaintiff and KND entered into a purchase agreement (the "Agreement") to purchase Amoy's mooncakes, which were described in the agreement as "Amoy Brand premium mooncake" (the "Amoy Mooncakes"), with a total price of US$1,260,000. Defendant Chen signed the Agreement on behalf of KND; Min Liu signed the Agreement for Plaintiff.

31.     Plaintiff made the first payment of US$378,964 to KND on or about May 7, 2021, and the second payment of US$250,000 to KND on September 9, 2021, by hand delivery of two checks to Defendant Liu.

32.     The Amoy Mooncakes were delivered between June and August, 2021 to May Flower's New York and California warehouses. After the Amoy Mooncakes were shipped from Asia to U.S., Best LLC hired an interstate shipping company called M 5 Trucking Inc. to make the New York delivery; Best LLC hired another interstate shipping company called Excelcity

Logistics to make the delivery in California. Each delivery came with a document called "Delivery Note" from Best LLC summarizing the contents of the delivery and other relevant information.

33.     After signing the Agreement and even before the delivery, Plaintiff started to pre-sale the mooncake products to its customers. One of the potential customers is Weee! Inc. ("Weee!"), an online retailer in the U.S. Because the Amoy Mooncakes contain the ingredient of eggs, duck eggs or egg yolk, Weee! requested for the special permit issued by the United States Department of Agriculture ("USDA") relating to the Amoy Mooncakes. Another customer CAM International Market also requested for such USDA permit.

34.     Plaintiff obtained the requested permit from Best LLC through email and Wechat and forwarded them to Weee! and CAM International Market. After receiving the USDA permit, Weee! refused to place any order for the Amoy Mooncakes and CAM International Market cancelled the order with Plaintiff for the Amoy Mooncakes.

35.     Contrary to the Defendants Liu, Chen, and Dai's representations, upon receipt of the USDA permit, Plaintiff found that the Mooncakes are not manufactured in Hong Kong by Amoy, but manufactured in China by ACC Food Manufacturer LLC Foshan, a company located in Foshan City, Guangdong Province, China ("ACC").

36.     ACC was named as the shipper on the USDA permit issued to Best LLC for importing mooncake products containing eggs, duck eggs or egg yolk ingredients. Moreover, ACC was named as the shipper and manufacturer of the Amoy Mooncakes on the sampling and examination result ordered by the U.S. Food and Drug Administration ("FDA") upon importation.

37.     In fact, before Plaintiff entered into the Agreement with KND, ACC had contacted Plaintiff and expressed an interest in engaging Plaintiff to sell ACC's mooncakes as a distributor or brand owner in the U.S. market. But Plaintiff did not proceed with such discussion and

negotiation because Plaintiff had concern about mooncakes made in China. However, it turned out that the Amoy Mooncakes received by Plaintiff were actually manufactured by ACC in China. The only difference is the Amoy Mooncakes under the Agreement were sold double the price as proposed by ACC.

38.     In addition, upon search within the United States Patent and Trademark Office, the trademark used on the Amoy Mooncake and relevant advertisement has not been filed until June 7, 2021 (trademark application serial No. 90757571, the "Trademark Application"), a month after the Agreement was entered into. And the Trademark Application was made on the basis of intent to use. And the Trademark Application have never been approved for registration.

39.     Upon discovering that it was defrauded, Plaintiff made demands to Defendants to return the Amoy Mooncakes. During the communication of return, Plaintiff was directed by Defendants Liu, Chen and Dai to return the Amoy Mooncakes to Grand Food. Specifically, Defendant Liu made the instruction through Wechat to Min Liu. Also, in an in-person meeting with Min Liu on or about September 24, 2021, Defendants Liu, Chen and Dai all represented that Grand Food was one of the subsidiaries of Best LLC and instructed that the remaining Amoy Mooncakes should be returned to Grand Food.

40.     In reliance on the representations that Grand Food was one of the subsidiaries of Best LLC made by Defendant Liu, Chen and Dai, Plaintiff returned the Amoy Mooncakes to Grand Food between the beginning of August 2021 and October 5, 2021.

41.     However, Best LLC and KND thereafter denied the receipt of the returned Amoy Mooncakes and refused to refund Plaintiff any money for the returned Amoy Mooncakes.

42.     In an email sent from Best LLC's accounting department dated Jan. 4, 2022, Best LLC denied that Best LLC had any connection with the sale of the Amoy Mooncakes and asked

Plaintiff to contact KND for this matter. Defendants Liu, Chen, Dai and Best LLC's chairman Johnny Kwok were all copied in this email chain.

**B.  Extortion and Blackmail**

43.     On or about December 15, 2021, Brian Lin led seven male gangsters (their identities are unknown) to May Flower's office and warehouse located at 56-72 49th Pl., Maspeth, New York, 11379, demanding payment of an invoice (the "Invoice") issued by KND. The outstanding amount on the Invoice is $520,149. A copy of the Invoice is attached hereto as **Exhibit A**. Brian Lin represented that he was a manager of KND. Brian Lin and the gangsters threated to beat up May Flower's employees if the Invoice was not paid. Upon learning that May Flower still refused to make the payment, Lin and the gangsters threatened that many bad things would happen to May Flower and its employees in the near future. Upon information and belief, Defendants Liu and Chen were also involved with this incident because Defendant Liu made a demand of $520,149 to Plaintiff through Wechat communication and Defendant Chen claimed he prepared the Invoice at issue.

44.     Bad things did happen to Plaintiff and its employees. On or about January 4, 2022, May Flower's four commercial trucks parked outside of its warehouses were severely damaged (poured sugar into the gas tanks) at night by some criminals. May Flower reported to the police. The police issued a wanted warrant against these criminals. A copy of the wanted warrant is attached hereto as **Exhibit B**. Plaintiff suffered damages in the amount of at least $650,000 because of the damaged trucks.

45.     On or about February 3, 2022, May Flower's general manager Min Liu's car was damaged and was poured red paint all over the body of the car. A photo of the damaged car is

attached hereto as **Exhibit C**.  On the same day, the front gate of May Flower's shareholder's home was poured red paint, a photo of which is attached hereto as **Exhibit D**.

46.    On or about February 10, 2022, at the front door of its New York office, May Flower received an extortion letter (in Chinese), saying that "May Flower manager and owner, the mooncake money and three activities fee total $600,000. I give you ten days. You should know where to pay. If you don't pay, I will kill you. Feb. 4." A copy of the extortion letter is attached hereto as **Exhibit E**.

47.    Upon information and belief, the extortion letter was sent by Defendants Liu, Chen, Dai and Lin, on their own behalf, also on the behalf of Defendants Amoy, Amoy North America, Best LLC Grand Food and KND, because the extortion letter mentioned "the mooncake money" and the "three activities fee."

48.    On May 12, 2022, KND continued its effort to collect the amount of $520,149 in the Invoice by filing a lawsuit in the New York County Supreme Court (Index No. 651964/2022) (the "KND Action") against May Flower and its owner. The KND Action is currently pending.

49.    In the KND Action, Defendant Chen admitted he was the person preparing the Invoice. And Defendant Dai admitted that he is "a partner and has overall responsibilities" in KND.

50.    Also, in the KND Action, both Chen and Dai claimed that they are "one of the owners of KND."

## COUNT I
### (FRAUD AGAINST AMOY, AMOY NORTH AMERICA, CONEXUS, GRAND FOOD, KND, LIU, CHEN, AND DAI)

51.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 45 therewith the same force and effect as if fully set forth herein.

52.     As fully stated above, Defendant Liu, Chen and Dai made multiple misrepresentations (that the Amoy Mooncakes were manufactured by Amoy in Hong Kong) to Plaintiff in order to induce Plaintiff to enter into the Agreement with KND. When these misrepresentations were made, Defendant Liu claimed himself as a representative of Amoy and a director of Amoy North America and Defendant Chen and Dai claimed themselves as representative as Best LLC (Conexus).

53.     The registered trademark symbol ® was also used by Defendants Amoy, Amoy North America, Best LLC, Liu, Chen and Dai in connection with the Amoy Mooncake products to defraud Plaintiff because the Amoy trademark has not been registered by the U.S. trademark office for the mooncake products yet.

54.     By reasonably relying these representations, Plaintiff entered into the Agreement with KND. Defendant Chen signed the Agreement on behalf of KND.

55.     After Plaintiff realized the Amoy Mooncakes were not produced by Amoy in Hong Kong, Plaintiff returned the unsold Amoy Mooncakes to Grand Food as directed by Defendant Liu, Chen and Dai, between the beginning of August 2021 and October 5, 2021.

56.     According to Defendant Liu, Chen and Dai, KND, Best LLC and Grand Food were companies managed and operated by the same group of people.

57.     However, KND and Best LLC later denied they received any returned Amoy Mooncakes from Plaintiff.

58.     Plaintiff suffered damages in the amount of $446,815 because of Defendants' misrepresentations.

## COUNT II
## (RICO 18 USC § 1962(c) AGAINST ALL DEFENDANTS)

59.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 53 therewith the same force and effect as if fully set forth herein.

60.     The RICO statute 18 U.S.C. §1962(c) and (d), provides a civil cause of action to persons in their business or property by reason of the defendant's operation of, or conspiracy to operate, an enterprise through a pattern of racketeering acts.

61.     Defendants violated RICO and Plaintiff was injured as a result.

62.     Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961 (3).

63.     Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

64.     The Enterprise. Defendants Liu, Chen, Dai, and Lin, together with Amoy, Amoy North America, Best LLC (also known as Conexus), Best Inc., Grand Food and KND, and one or more gangsters led by Brian Lin, form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

65.     Alternatively, Defendants Liu, Chen, Dai, Lin and one or more gangsters led by Brian Lin constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).

66.     Alternatively, Defendants Amoy, Amoy North America, Best LLC (also known as Conexus), Best Inc., Grand Food and KND together constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).

67.     Each enterprise has engaged in, and their activities have affected foreign or interstate commerce.

68.     The associates or members of the enterprise work together as a unit to defraud and to extort Plaintiff in the following way:

a.  Liu used his director/representative position in Amoy North America/Amoy to propose a sale of the Amoy Mooncakes to Plaintiff and to gain Plaintiff's trust;

b.  Chen and Dai used their position and title in Best LLC to gain Plaintiff's trust and to propose the sale of the Amoy Mooncakes;

c.  In the course of defrauding Plaintiff relating to the Amoy Mooncakes, Liu, Chen and Dai all made various misrepresentations in-person or through emails or Wechat;

d.  At the time of signing the Agreement for the Amoy Mooncakes, Liu, Chen and Dai proposed an agreement on which KND was the seller instead of Best LLC, and Defendants Liu, Chen and Dai stated that KND was one of the subsidiaries of Best LLC and both KND and Best LLC were distributors of Amoy controlled by the same group of management. Defendant Chen signed the Agreement for KND. However, Best LLC later denied its connection with KND;

e.  When Plaintiff realized it was defrauded on the Amoy Mooncakes, Plaintiff made demands to Defendants to return mooncakes. Plaintiff was told by Defendants Liu, Chen and Dai that all the Amoy Mooncakes should be returned to Grand Food and Grand Food was one of the subsidiaries of Best LLC. Plaintiff returned the remaining Amoy Mooncakes to Grand Food. But Best LLC and KND thereafter denied the receipt of the returned Amoy Mooncakes and refused to refund Plaintiff any money for the returned Amoy Mooncakes;

f.  Defendant Liu later made a demand of $520,149 to Plaintiff (claiming Plaintiff owed the money under the Agreement) through Wechat communication. And Defendant Chen prepared an Invoice under the title of KND with an outstanding amount of $520,149 to Plaintiff;

g.  On or about December 15, 2021, Defendant Lin (claiming he was a manager of KND) showed up at Plaintiff's New York office and warehouse with seven other gangsters demanding payment of the Invoice. Brian Lin and the gangsters threated to beat up May Flower's employees if the Invoice was not paid. Upon learning that May Flower still refused to make the payment, Lin and the gangsters threatened many bad things would happen to May Flower and its employees in the near future;

h.  On or about January 4, 2022, May Flower's four commercial trucks parked outside of its warehouses were severely damaged (poured sugar into the gas tanks) at night;

i.  On or about February 3, 2022, May Flower's general manager Min Liu's car was damaged and was poured red paint all over the body of the car. On the same day, the front gate of May Flower's shareholder's home was poured red paint;

j.  On or about February 10, 2022, at the front door of its New York office, Plaintiff received an extortion letter (in Chinese), saying that "May Flower manager and owner, the mooncake money and three activities fee total $600,000. I give you ten days. You should know where to pay. If you don't pay, I will kill you. Feb. 4."

69.  The enterprise's purpose was to defraud Plaintiff through the sale of the Amoy Mooncakes and to obtain money from Plaintiff through extortion.

70.  Pattern of Racketeering Activity. Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or

participate, directly or indirectly. in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961 (1), 1961 (3), and 1962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

71.     Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. $ 1961(1), as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

72.     The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission.

73.     Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

74.     Predicate Act: Use of Mails to defraud Plaintiff in Violation of 18 U.S.C. § 1341. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1341 in that they devised a scheme or artifice to defraud Plaintiff or to obtain money from Plaintiff by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme, Defendants caused delivery of documents and goods by the U.S. mails or by private or commercial interstate carriers, or received such therefrom. The acts of Defendants set forth above were done with knowledge that the use of the mails would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme.

75.     Defendants' shared objective was and is to defraud Plaintiff through the sale of the Amoy Mooncakes and obtain money from Plaintiff illegally.

76.     Plaintiff reasonably and justifiably relied upon Defendants' false representation, false pretenses and deceptive communications, and Plaintiff has been damages as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

77.     <u>Predicate Act: Use of Wires to defraud Plaintiff in Violation of 18 U.S.C. § 1343.</u> Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1343 in that they devised a scheme or artifice to defraud Plaintiff or to obtain money from Plaintiff by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme, Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs and signals. The acts of Defendants set forth above were done with knowledge that the use of the wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme.

78.     Defendants carried out their scheme in different states and countries and could not have done so unless they used the interstate wires. In furtherance of their scheme alleged herein, Defendants Liu, Chen, Dai and Lin communicated among themselves and with Plaintiff in furtherance of the scheme to defraud Plaintiff. These communications were typically transmitted by wire (i.e., electronically, including but not limited to emails, text messages, phone apps and other social media).

79.     Specifically, Defendant Liu sent Wechat messages to Plaintiff's general manager Min Liu regarding the photos of the Amoy Mooncakes and the photos of the promotion and marketing materials for the Amoy Mooncakes before the Agreement was entered into. Defendant

Liu also contacted Min Liu on Wechat regarding the return of the Amoy Mooncakes and the disputes on the contract money.

80.     In addition, Defendants Liu, Chen, Dai and Best LLC communicated with Plaintiff through emails regarding the return of the Amoy Mooncakes and the contract money.

81.     Defendants' shared objective was and is to defraud Plaintiff of the contract money for the Amoy Mooncakes.

82.     Plaintiff reasonably and justifiably relied upon Defendants' false representation, false pretenses and deceptive communications, and Plaintiff has been damages as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

83.     Predicate Act: Extortion in Violation of New York State Law and 18 U.S.C. § 1951. Defendants committed acts constituting indictable offenses for extortion (or coercion) in that Defendants attempted and conspired to compel Plaintiff to pay the money for the Amoy Mooncakes and the "three activities fee" by instilling a fear of physical injury to Plaintiff's owner and employees and damages to Plaintiff's property.

84.     Specifically, on or about December 15, 2021, seven gangsters led by Defendant Lin threatened to beat up Plaintiff's employees if the Invoice in the amount of $520,149 was paid. Upon information and belief, Defendants Liu, Chen and Dai were also involved with this incident because Defendant Liu made a demand of $520,149 to Plaintiff through Wechat communication and Defendant Chen claimed he prepared the Invoice at issue and Chen signed the Agreement for KND.

85.     In addition, on or about January 4, 2022, May Flower's four commercial trucks parking outside of its warehouses were severely damaged (poured sugar into the gas tanks) at night by unknown gangsters. On or about February 3, 2022, both Min Liu's (Plaintiff's General Manager)

car and Plaintiff's shareholder's home was poured red paint. Upon information and belief, Defendant Liu, Chen, Dai and Lin were involved with this incident because during Dec. 15, 2021 incident, Lin had threatened that many bad things would happen to May Flower and its employees in the near future and Liu, Chen and Dai were involved with that incident.

86.    Also, on or about February 10, 2022, at the front door of May Flower's office, May Flower received an extortion letter (in Chinese), saying that "May Flower manager and owner, the mooncake money and three activities fee total $600,000. I give you ten days. You should know where to pay. If you don't pay, I will kill you. Feb. 4." Upon information and belief, the extortion letter was sent by Defendants Liu, Chen, Dai and Lin, on their own behalf, also on the behalf of Defendants Amoy, Amoy North America, Best LLC and Grand Food, because the extortion letter mentioned "the mooncake money" and the "three activities fee."

87.    Defendants also committed acts constituting indictable offenses under 18 U.S.C. § 1951 in that Defendants obstructed, delayed, or affected commerce or the movement of any article or commodity in commerce by causing damages to Plaintiff's four trucks on January 4, 2022 and by damaging Min Liu's car on February 3, 2022.

88.    Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined in violation of 18 U.S.C. § 1962(c).

89.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business or property. Plaintiff seeks an award of damages in compensation for, among other things, the damages to Plaintiff's business and property in the amount of $1,096,815.

90.     Plaintiff further seeks an award of three times the damages they sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

## COUNT III
### (CONSPIRACY IN VIOLAITON OF RICO 18 USC § 1962(d) AGAINST ALL DEFENDANTS)

91.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 85 therewith the same force and effect as if fully set forth herein.

92.     In violation of 18 U.S.C. § 1962 (d), the Defendants Liu, Chen, Dai, and Lin, together with Defendants Amoy, Amoy North America, Best LLC (also known as Conexus), Best Inc., Grand Food and KND, and each of them, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation and management of a Rico enterprise through a pattern of racketeering activity as alleged in paragraphs 21-85 above.

93.     The conspiracy's purpose was to defraud Plaintiff through the sale of the Amoy Mooncakes and to obtain money from Plaintiff through extortion.

94.     Each Defendant committed at least one overt act in furtherance of such conspiracy.

95.     Even if some of the Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

96.     Plaintiff has been injured and continues to be injured in its business and property by Defendants' conspiracy in violation of 18 U.S.C. $ 1962(d). The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in its business or property. Plaintiff seeks an award of damages in compensation for, among other things, the damages to Plaintiff's business and property in the amount of $1,096,815.

97.     Plaintiff further seeks an award of three times the damages they sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

(a)     awarding damages on Count I in the amount of $446,815, plus interest;

(b)     awarding damages on Count II in the amount of $1,096,815, treble damages in the amount of $3,290,445, the costs of the suit and reasonable legal fees;

(c)     awarding damages on Count III in the amount of $1,096,815, treble damages in the amount of $3,290,445, the costs of the suit and reasonable legal fees;

**(d)**     together with such further and additional relief as this Court deems fair and proper.

## <u>JURY DEMAND</u>

May Flower International, Inc. demands a jury trial on all issues so triable.


Dated: Queens, New York
        July 15, 2024




                                        **KEVIN KERVENG TUNG, P.C.**
                                        *Attorneys for Plaintiff*


                                        */s/Kevin K. Tung*
                                        By: Kevin K. Tung, Esq.
                                        136-20 38th Avenue, Suite 3D
                                        Flushing, New York 11354
                                        (718) 939-4633

21