UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MAY FLOWER INTERNATIONAL, INC.,

                Plaintiff,

      -against-

AMOY FOOD LIMITED; AMOY ASIAN FOODS
NORTH AMERICA, INC.; BEST FOOD
SERVICES, INC.; CONEXUS FOOD SOLUTIONS
LLC (f/k/a BEST FOOD SERVICES LLC); GRAND
FOOD SERVICE, INC. a/k/a GOLDEN CITY FOOD
SERVICE; KND GLOBAL LLC; ALLAN ZHIPING
CHEN a/k/a ALLAN CHEN; BRIAN LIN; WEI PENG
DAI a/k/a WEIPENG DAI; WEN LIN LIU a/k/a ERIC
LIU; and JOHN DOES 1-10,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-4909 (OEM) (VMS)

ORELIA E. MERCHANT, United States District Judge:

On July 15, 2024, Plaintiff May Flower International, Inc. ("Plaintiff" or "May Flower"), commenced this action against Defendants Amoy Food Limited ("Amoy"); Amoy Asian Foods North America, Inc. ("Amoy North America"); Best Food Services, Inc. ("Best Food, Inc."); Conexus Food Solutions LLC f/k/a Best Food Services LLC ("Best Food LLC"); Grand Food Service, Inc., a/k/a Golden City Food Service ("Grand Food"); KND Global LLC ("KND"); Allan Zhiping Chen a/k/a Allan Chen ("Chen"); Brian Lin ("Lin"); Wei Peng Dai a/k/a Weipeng Dai ("Dai"); Wen Lin Liu a/k/a Eric Liu ("Liu"); and John Does 1-10. In its complaint, Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c)-(d) ("RICO"), and common law fraud. *See generally* Complaint, Dkt. 1 (the "Complaint" or "Compl."); Amended Complaint, Dkt. 43 (the "Amended Complaint" or "Am. Compl."). Before the Court are motions to dismiss filed on April 11, 2025, by four sets of Defendants: (1) Amoy, Amoy North America, and Liu (collectively, the "Amoy Defendants"), (2) Best Food, Inc., and

Best Food LLC (collectively, the "Best Food Defendants"), (3) Grand Food, and (4) KND, Chen, and Dai (collectively, the "KND Defendants"). *See generally* Memorandum of Law in Support of Defendants Amoy Food Limited, Amoy Asian Foods North America, Inc, and Wen Lin "Eric" Liu's Motion to Dismiss, Dkt. 63-1 ("Amoy MTD"); Defendants Conexus Food Solutions LLC's and Best Food Services, Inc.'s Memorandum of Law in Support of Motion to Dismiss, Dkt. 71-1 ("Best Food MTD"); Memorandum of Law in Support of Defendant Grand Food Service, Inc. a/k/a Golden City Food Service's Motion to Dismiss the Amended Complaint and for Other Relief, Dkt. 65-1 ("Grand Food MTD"); Defendants KND Global LLC, Allan Zhiping Chen, and Wei Peng Dai's Memorandum of Law in Support of Motion to Dismiss, Dkt. 66-1 ("KND MTD").

For the following reasons, the Court grants the Amoy Defendants', Best Food Defendants', Grand Food's, and KND Defendants' motions to dismiss and dismisses this matter in its entirety.[1]

## BACKGROUND

This suit arises out of Plaintiff's purchase of allegedly fraudulent mooncakes[2] on or about April 28, 2021 (the "Mooncake Transaction").

### A. The Mooncake Transaction

In the months leading up to the purchase, Plaintiff alleges that its general manager, Min Liu (the "General Manager"), met with Defendants Liu, Dai, and Chen on three separate occasions: first with Liu, who presented himself as a representative of Defendant Amoy and a director of

---

[1] While Lin has not appeared and joined these motions, *sua sponte* dismissal is proper because, as discussed below, "the issues concerning [Lin] are substantially the same as those concerning the other defendants, and [Plaintiff] . . . had notice and a full opportunity to make out [its] claim against [him]." *Hecht v. Com. Clearing House, Inc.*, 897 F.3d 21, 26 n.6 (2d Cir. 1990) (first citing *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988); then citing 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1357 (1969)) (affirming the dismissal of a civil RICO action even though one defendant failed to appear).

[2] A mooncake is a small, round pastry "traditionally associated with the Mid-Autumn Festival in Chinese culture and various other East and Southeast Asian cultures." *See Mooncake*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/mooncake (last visited Nov. 4, 2025).

2

Defendant Amoy North America,³ on February 23, 2021; second with Liu and Dai, who presented himself as a director of Defendant Best Food LLC, in or about mid-March 2021; and last with Liu, Dai, and Chen, who presented himself as a sales director of Best Food LLC, in or about early April 2021. Am. Compl. ¶¶ 23-26. In those meetings, Liu ostensibly told Plaintiff's General Manager that Amoy intended to produce its first mooncakes and asked if Plaintiff wanted to be the exclusive distributor of those mooncakes in the United States. *Id.* ¶ 23. Dai stated that Best Food LLC was a distributor and affiliate of Amoy.⁴ *Id.* ¶ 25. Importantly, Liu, Dai, and Chen allegedly assured Plaintiff's General Manager repeatedly that Amoy intended to manufacture its mooncakes in Hong Kong. *Id.* ¶¶ 23-26. They also purportedly represented that the trademark "Amoy" had been registered for the mooncakes in the United States. *Id.* ¶ 28.

In that same time period, Chen allegedly emailed Plaintiff an Account Application Form from Defendant Grand Food, which contained a personal guaranty of payment to Grand Food, and asked Plaintiff to fill out the form to continue the negotiation. *Id.* ¶ 24. Liu also purportedly sent Plaintiff's General Manager photographs of the mooncakes, which displayed Amoy's U.S. registered trademark. *Id.* ¶ 27. Plaintiff further alleges that Best Food LLC's U.S. promotional materials for the mooncakes displayed the Amoy trademark. *Id.* ¶ 28.

On or around April 28, 2021, Plaintiff and Defendant KND executed a contract for the purchase of the mooncakes (the "Contract"). *Id.* ¶¶ 30-31. When Plaintiff asked Liu, Chen, and Dai why KND, as opposed to Amoy or Amoy North America, was identified as the seller, Liu,

---

³ Amoy North America is a wholly owned subsidiary of Amoy. *See* Rule 7.1 Disclosure Statement, Dkt. 25.

⁴ Best Food, Inc., merged into Best Food LLC on January 4, 2018. *See* Defendant Best Food Services, Inc.'s Rule 7.1 Corporate Disclosure Statement, Dkt. 30. Best Food LLC (now known as Conexus Food Solutions LLC) is independent of Amoy and Amoy North America. *See* Defendant Conexus Food Solutions LLC's Rule 7.1 Corporate Disclosure Statement, Dkt. 29.

3

Chen, and Dai allegedly told Plaintiff that KND was a subsidiary of Best Food LLC[5] and that both KND and Best Food LLC were distributors of Amoy and controlled by the same management. *Id.* Liu, Chen, and Dai also ostensibly stated that they represented KND and could sign on its behalf. *Id.* Plaintiff contends that the Contract further described the mooncakes as "Amoy Brand premium mooncake" and included a total purchase price of $1,260,000. *Id.* ¶ 31. Plaintiff's General Manager signed on behalf of Plaintiff, and Chen signed on behalf of KND. *Id.*

Pursuant to the Contract, Plaintiff alleges it made two payments to KND: first in the amount of $378,964 on or around May 7, 2021, and second in the amount of $250,000 on September 9, 2021. *Id.* ¶ 32. Plaintiff states it hand delivered both payments as checks to Liu. *Id.*

In turn, the mooncakes were delivered to Plaintiff's New York and California warehouses between June and August 2021. *Id.* ¶ 33. Best Food LLC and KND allegedly hired interstate shipping companies to handle the deliveries, one of which was Grand Food, who delivered approximately 435 cases to Plaintiff's New York warehouses. *Id.* ¶¶ 33-34.

"After signing the Agreement and even before the delivery," Plaintiff states that it started a pre-sale of the mooncakes. *Id.* ¶ 35. During that pre-sale, two customers ostensibly asked to see the mooncakes' U.S. Department of Agriculture permit, which Plaintiff then obtained from Best Food LLC. *Id.* ¶¶ 35-37. When it reviewed the permit, Plaintiff allegedly discovered that the mooncakes were not manufactured in Hong Kong by Amoy but were, in fact, manufactured in China by ACC Food Manufacturer LLC Foshan ("ACC"), located in Foshan City, Guangdong Province, China. *Id.* ¶¶ 36-37. Plaintiff asserts that before it entered into the Contract with KND, ACC allegedly reached out to Plaintiff, asking whether Plaintiff was interested in selling ACC's mooncakes in the U.S. market. *Id.* ¶ 39. But Plaintiff states it declined to do so because it was

---

[5] KND does not identify Best Food LLC as a parent corporation. *See* Rule 7.1 Disclosure of KND Global LLC, Dkt. 33.

4

"concern[ed] about mooncakes made in China." *Id.* The price Plaintiff ultimately purchased the mooncakes for was purportedly "double the price as [initially] proposed by ACC." *Id.* Plaintiff additionally discovered through a search that the Amoy trademark had not been filed with the U.S. Patent and Trademark Office until about a month after the Contract was signed and that the trademark was never approved. *Id.* ¶ 40.

Plaintiff subsequently sought to return the mooncakes on August 6, 2021. *Id.* ¶ 41. In doing so, Plaintiff was allegedly told by Liu, Chen, and Dai to return the product to Grand Food, which they represented was a subsidiary of Best Food LLC.[6] *Id.* Plaintiff thus returned the mooncakes to Grand Food "between the beginning of August 2021 and October 5, 2021." *Id.* ¶ 42.

Best Food LLC and KND thereafter allegedly denied that they had received the mooncakes and refused to return any money for the mooncakes. *Id.* ¶ 43.

On or about December 15, 2021, Plaintiff alleges that Defendant Brian Lin "led seven male gangsters" to Plaintiff's office and warehouse located in Maspeth, New York, and demanded payment of an invoice issued by KND. *Id.* ¶ 45; *see also id.*, Exhibit A. Lin allegedly represented himself as a manager of KND and threatened "to beat up [Plaintiff's] employees if the Invoice was not paid." Am. Compl. ¶ 45. When Plaintiff refused to pay, "Lin and the gangsters threatened that many bad things would happen to [Plaintiff] and its employees in the near future." *Id.*

Plaintiff alleges that "bad things" did happen. *Id.* ¶ 46. Four of Plaintiff's trucks were "severely damaged" by the pouring of "sugar into [their] gas tanks" on or about January 4, 2022, *id.* ¶ 46; *id.*, Exhibit B, and red paint was splashed on Plaintiff's General Manager's car and the front gate of Plaintiff's shareholder's home on or about February 3, 2022, Am. Compl. ¶ 47; *id.*, Exhibits C & D. Plaintiff additionally states that an "extortion letter" written in Chinese was left

---

[6] Grand Food has no public stakeholders or parent corporation. *See* Defendant Grand Food Service, inc. a/k/a/ Golden City Food Service's Rule 7.1 Corporate Disclosure Statement, Dkt. 31.

5

at the front door of its New York office on about February 10, 2022, which stated: "May Flower manager and owner, the mooncake money and three activities fee total $600,000.  I give you ten days.  You should know where to pay.  If you don't pay, I will kill you."  Am. Compl. ¶ 48; *id.*, Exhibit E.  Plaintiff claims that Liu, Chen, Dai, and Lin, on their own behalf and behalf of Amoy, Amoy North America, Best Food LLC, Grand Food, and KND, sent the letter because it "mentioned 'the mooncake money' and the 'three activities fee.'"  Am. Compl. ¶ 49.  Plaintiff lastly notes that KND commenced a collections action against Plaintiff and its owner on May 12, 2022, in New York County Supreme Court.  *Id.* ¶ 50.  That action is currently pending.  *See KND Glob. LLC v. May Flower Int'l Inc.*, Index No. 651964/2022 (N.Y. Sup. Ct. 2022) (the "Collections Action").[7]

### B. Procedural History

On July 15, 2024, Plaintiff filed its Complaint in this action, *see* Compl., which it subsequently amended on November 4, 2024, *see* Am. Compl.  Plaintiff asserts one count of New York common law fraud and two counts of RICO violations under 18 U.S.C. § 1962(c) ("Section 1962(c)") and 18 U.S.C. § 1962(d) ("Section 1962(d)").  *See* Am. Compl. ¶¶ 53-109.  As to fraud, Plaintiff alleges that Defendants intentionally misrepresented that the mooncakes were manufactured by Amoy in Hong Kong to induce Plaintiff to enter into the Contract.  *See id.* ¶¶ 53-61.  Plaintiff alleges that it reasonably relied upon that misrepresentation and was damaged in the amount of $446,815.  *See id.*

---

[7] The Court may take judicial notice of this state court matter and materials filed therein.  *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))).  All subsequent references to this docket will be denoted by "Collections Action Dkt."

As to RICO, Plaintiff asserts that Defendants violated Section 1962(c) because they constitute an "association-in-fact" enterprise engaged in a "continuing pattern of racketeering activity," *id.* ¶ 67, comprising mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and extortion in violation of 18 U.S.C. § 1951 and New York common law, *id.* ¶¶ 78-97. Plaintiff also alleges Defendants violated Section 1962(d) by "conspir[ing] to facilitate a scheme which included the operation and management of a Rico enterprise through a pattern of racketeering activity." *Id.* ¶ 103. For each RICO violation, Plaintiff asserts damages to its business and property in the amount of $1,096,815 and seeks an award of treble damages, attorneys' fees, and any other relief the Court deems just and proper. *Id.* ¶¶ 100-01, 108-09.

In response, the Amoy Defendants, Best Food Defendants, Grand Food, and KND Defendants served motions to dismiss on January 13, 2025. *See generally* Amoy MTD; Best Food MTD; Grand Food MTD; and KND MTD. All four groups of Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing that Plaintiff has failed to state claims upon which relief can be granted. *See* Amoy MTD at 4-13; Best Food MTD at 4-16; Grand Food MTD at 4-17; KND MTD at 5-18.

Plaintiff served oppositions to the Defendants' motions to dismiss on March 14, 2025. *See generally* Plaintiff's Memorandum of Law in Opposition to Amoy Defendants' Motion to Dismiss, Dkt. 64 ("Amoy Opp'n"); Plaintiff's Memorandum of Law in Opposition to Best Defendants' Motion to Dismiss, Dkt. 73 ("Best Food Opp'n"); Plaintiff's Memorandum of Law in Opposition to Grand Food's Motion to Dismiss, Dkt. 67 ("Grand Food Opp'n"); and Plaintiff's Memorandum of Law in Opposition to KND Defendants' Motion to Dismiss, Dkt. 68 ("KND Opp'n").

Defendants served their replies in further support of their motions to dismiss on April 11, 2025. *See generally* Reply Memorandum of Law in Further Support of Defendants Amoy Food

Limited, Amoy Asian Foods North America, Inc, and Wen Lin "Eric" Liu's Motion to Dismiss, Dkt. 70; Defendants Conexus Food Solution LLC's and Best Food Services, Inc.'s Reply in Support of Motion to Dismiss, Dkt. 74; Reply Memorandum of Law in Further Support of Defendant Grand Food Service, Inc. a/k/a Golden City Food Service's Motion to Dismiss the Amended Complaint and for Other Relief, Dkt. 69; Defendants KND Global LLC, Allan Zhiping Chen, and Wei Peng Dai's Reply Memorandum of Law in Further Support of Motion to Dismiss, Dkt. 72.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A court must review a motion to dismiss under Rule 12(b)(6) by "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Nevertheless, a court need not assume that legal conclusions set out in a complaint are true. *See Petroff Amshen LLP v. Alfa Rehab PT PC*, 19-CV-1861 (MKB)(RML), 2021 WL 960394, at *6 (E.D.N.Y. Mar. 15, 2021), *aff'd*, 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022).

For RICO claims, in particular, to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must offer 'more than labels and conclusions' in pleading the non-fraud elements," while a plaintiff must meet the heightened particularity requirement of Federal Rule of Civil Procedure 9(b) when

8

pleading "predicate acts sounding in fraud or mistake." *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### A. Plaintiff Fails to State a Claim Under 18 U.S.C. § 1962(c).

Civil "RICO creates a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (alteration in original) (quoting 18 U.S.C. § 1964(c)). In relevant part, Section 1962 prohibits "any person employed by or associated with any enterprise" affecting foreign or interstate commerce from participating "in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To establish a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). If successful, a plaintiff is entitled to "threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

"Given the 'powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO' due to 'the allure of treble damages, attorney's fees, and federal jurisdiction,' courts must 'scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.'" *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 64 (E.D.N.Y. 2020) (quoting *Holmes v. Parade Place, LLC*, 12-CV-6299 (GBD) (DF), 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013)); *see also Abbott Lab'ys v. Adelphia Supply USA*, 15-CV-5826 (CBA) (LB), 2017 WL 57802, at *2 (E.D.N.Y. Jan. 4, 2017) ("Indeed RICO claims based on fraud receive especially

9

careful scrutiny because 'virtually every ordinary fraud is carried out in some form by means of mail or wire communication,' and thus there is 'the potential for transforming garden-variety common law actions into federal cases.'" (quoting *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009))). After carefully reviewing Plaintiff's Amended Complaint, the Court finds that Plaintiff's Section 1962(c) claim is exactly the type of garden-variety claim that should be weeded out: it fails chiefly because it does not plausibly allege establish a RICO enterprise or a pattern of racketeering activity.

**1. Plaintiff Does Not Plausibly Allege an Enterprise.**

"The RICO statute defines 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *D'Addario v. D'Addario*, 901 F.3d 80, 100 (2d Cir. 2018) (quoting 18 U.S.C. § 1961(4)). An "'association-in-fact' enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, (2009). Importantly, an enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

In its Amended Complaint, Plaintiff alleges that "Defendants Liu, Chen, Dai, and Lin, together with Amoy, Amoy North America, Best LLC (also known as Conexus), Best Inc., Grand Food and KND, and one or more gangsters led by Brian Lin, form an association-in-fact" enterprise. Am. Compl. ¶ 67. Alternatively, Plaintiff alleges that "Defendants Liu, Chen, Dai, Lin and one or more gangsters led by Brian Lin constitute an enterprise" or that "Defendants Amoy, Amoy, North America, Best LLC (also known as Conexus), Best Inc., Grand Food and KND together constitute an enterprise." *Id.* ¶¶ 68-69. Plaintiff additionally asserts that these enterprises'

10

"purpose was to defraud Plaintiff through the sale of the Amoy Mooncakes and to obtain money from Plaintiff through extortion, and to defraud and obtain money from other companies similar to Plaintiff." *Id.* ¶ 73.

Even "liberally construed," Amoy Opp'n at 5 (quoting *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020)); Best Food Opp'n at 11 (same); Grand Food Opp'n at 8 (same); KND Opp'n at 11 (same), Plaintiff's Amended Complaint fails to establish an enterprise because it fails to put forward any allegations indicating that the alleged enterprises existed separate and apart from the fraudulent scheme. Although Plaintiff asserts that Defendants shared the common purpose of "defraud[ing] and obtain[ing] money from other companies similar to Plaintiff," Am. Compl. ¶ 73, Plaintiff offers no support for that assertion beyond that bare conclusion. In fact, Plaintiff's allegations focus solely on the single Mooncake Transaction itself, in which Plaintiff contends Defendants perpetrated wire fraud, mail fraud, and extortion. *Id.* ¶¶ 67-73. But the Supreme Court has long held that such allegations cannot form the basis of a RICO enterprise. *See Turkette*, 452 U.S. at 583. "[I]n a fraud-based RICO claim, if the sole purpose of the alleged enterprise is to perpetrate the alleged fraud, there can be no enterprise for RICO purposes." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 401 (S.D.N.Y. 2000); *see also, e.g.*, *D. Penguin Bros.*, 587 F. App'x at 668 (declining to find an enterprise where the complaint presented no evidence that the alleged enterprise existed separate and apart from the fraudulent scheme); *Heinrich v. Dean*, 655 F. Supp. 3d 184, 192 (S.D.N.Y. 2023) (collecting cases and declining to find an enterprise where the extent of the defendants' purported enterprise was the same "pattern" of activity underlying the plaintiffs' RICO claim); *Long v. Zhuang*, 22-CV-1293 (DG) (TAM), 2024 WL 4250308, at *10 (E.D.N.Y. Aug. 8, 2024) ("Phrased another way, "[t]he defendants cannot be grouped together for the sole reason that they all allegedly had [involvement] in the alleged

11

acts' . . . Plaintiffs' failure to distinguish between the enterprise and its alleged illegal acts is fatal to the RICO claims." (alteration in original) (quoting *Aerowest GmbH v. Freitag*, 15-CV-2894 (LDW), 2016 WL 3636619, at *4 (E.D.N.Y. June 28, 2016))).

### 2. Plaintiff Does Not Plausibly Allege a Pattern of Racketeering Activity.

Plaintiff's claims additionally do not adequately allege a pattern of racketeering activity. To establish a pattern, a plaintiff must allege "two or more predicate acts of racketeering." *Lundy*, 711 F.3d at 119 (2d Cir. 2013) (citing 18 U.S.C. § 1961(5)). These predicate acts must be

> "related, and [either] amount to or pose a threat of continuing criminal activity." The latter so-called "continuity" requirement can be satisfied either by showing a "closed-ended" pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an "open-ended" pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed.

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (alteration in original) (citations omitted).

Plaintiff has failed to plausibly allege either type of continuity. For closed-ended continuity, the relevant time period is "the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Id.* at 184 (citations omitted). Ever since the Supreme Court's decision in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), the Second Circuit has been reluctant to hold a period "of less than two years" as a "substantial period of time." *Spool*, 520 F.3d at 183 (quoting *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). Although Plaintiff is correct to note that the Second Circuit has "not viewed two years as a bright-line requirement," *see* Best Food Opp'n at 10 (quoting *Spool*, 520 F.3d at 184); Grand Food Opp'n at 11 (same); KND Opp'n at 10 (same); the Second Circuit has observed that "it will be *rare* that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly

12

where, as here, . . . '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy,'" *Spool*, 520 F.3d at 184 (emphasis added) (quoting *GICC Cap. Corp. v. Tech. Finance Grp., Inc.*, 67 F.3d 463, 468 (2d Cir. 1995)).

Here, Plaintiffs allege that, in connection with the Mooncake Transaction, Defendants engaged in mail fraud between June and August 2021, wire fraud between March and September 2021, and extortion between December 2021 and February 2022. Am. Compl. ¶¶ 78-97. Even under the most liberal reading of the Amended Complaint, Defendants' alleged activity took place over a period of only 11 months. Such brevity falls short of the Second Circuit's two-year minimum for closed-ended continuity. *Contrast GICC Cap.*, 67 F.3d at 467-69 (finding 11 months insufficient)*, and Reiner v. Paneth*, 24-CV-4914 (RER) (PK), 2025 WL 2783246, at *23 (E.D.N.Y. Sept. 30, 2025) (dismissing a RICO claim where the alleged scheme lasted at most a few months and was aimed at one property)*, with 1567 56th Street, LLC v. Spitzer*, 774 F. Supp. 3d 476, 495-96 (E.D.N.Y. 2025) (finding closed-ended continuity where the scheme spanned over four years and involved numerous fraudulent mortgages and victims).

Neither does Plaintiff satisfy open-ended continuity. To establish open-ended continuity, Plaintiff "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 185 (quoting *Cofacrèdit,* 187 F.3d at 243). Where a plaintiff has only alleged a "discrete and relatively short-lived scheme to defraud a handful of victims," even if "serious," continued criminal activity is not plausible. *Cofacrèdit,* 187 F.3d at 244 (declining to find open-ended continuity where the plaintiff alleged that certain defendants committed mail and wire fraud for nearly one year); *Spool*, 520 F.3d at 186 (declining to find open-ended continuity where "[a]t most," the plaintiff alleged that the defendant

13

"fraudulently continued to process client cases over a period of several months"). "Inherently terminable" schemes do not satisfy open-ended continuity. *Spool*, 520 F.3d at 186.

Here, Plaintiff alleges that Defendants committed mail fraud, wire fraud, and extortion for a period of approximately 11 months in connection to a single contract. Am. Compl. ¶¶ 78-97. The Mooncake Transaction itself has ended. Plaintiff has not alleged that any of the alleged predicate acts have continued. *See, e.g.*, *MinedMap, Inc. v. Northway Mining, LLC*, 21-1480-cv, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022) ("First, MinedMap's allegations are largely conclusory and do not allege with the requisite particularity how the fraud scheme would continue into the future."). Nor does it stand to reason that the alleged illegal activity likely will: over three-and-a-half years have passed since the last alleged predicate act and, on May 12, 2022, Defendant KND filed the Collections Action against Plaintiff in New York State Supreme Court. *Id.* ¶ 50. Far from demonstrating a continuation of the alleged illegal acts, as Plaintiff contends, *see* Best Food Opp'n at 9-10; KND Opp'n at 9-10; Grand Food Opp'n at 10-11, the Collections Action demonstrates that the parties are lawfully litigating their respective rights under the Contract.[8]

Accordingly, the Court dismisses Plaintiff's Section 1962(c) claim.

### B. Plaintiff Fails to State a Claim Under 18 U.S.C. § 1962(d).

Plaintiff's Section 1962(d) claim fares no better. Where a RICO conspiracy claim alleges "an agreement to commit the same substantive RICO violations" that the court "deem[s] insufficiently pled" and where "the plaintiffs [do] not allege[] any further acts that, if carried out, would have satisfied RICO's requirement of a pattern of racketeering," the RICO conspiracy claim must be dismissed. *Williams v. Affinion Grp.*, LLC, 889 F.3d 116, 126 (2d Cir. 2018). Here,

---

[8] On November 26, 2024, Plaintiff moved to amend its answer in the Collections Action to include counterclaims for breach of contract and a U.C.C. violation. *See* Amended Answer, Collections Action Dkt. 40.

14

Plaintiff's Section 1962(c) claim fails for the reasons discussed above. Because Plaintiff has failed to allege any additional facts, its Section 1962(d) claim fails as well.

Accordingly, the Court dismisses Plaintiff's Section 1962(d) claim.

### C. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's Remaining Fraud Claim.

Although 28 U.S.C. § 1367(a) vests district courts with supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(c)(3) enables district courts to "decline to exercise supplemental jurisdiction" where they have "dismissed all claims over which [they have] original jurisdiction." Because this Court has dismissed the RICO claims over which it has original jurisdiction, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining common-law fraud claim.

Accordingly, Plaintiff's fraud claim is dismissed.

### D. The Court Declines to Grant Plaintiff Another Opportunity to Amend.

Lastly, Plaintiff requests leave to amend under Federal Rule of Civil Procedure 15(a)(2) ("Rule 15(a)(2)"). *See* Amoy Opp'n at 13-14; Best Food Opp'n at 16-17; Grand Food Opp'n at 16; KND Opp'n at 16-17. A party seeking to amend under Rule 15(a)(2) may do so "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Although courts should "freely give leave when justice so requires," as Plaintiff observes, Amoy Opp'n at 13-14 (quoting *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015)); Best Food Opp'n at 16-17 (same); Grand Food Opp'n at 16 (same); KND Opp'n at 16-17 (same), this principle is not without limits. *See Garrand Brothers LLC v. Am. Honda Motor Co.*, 23-7343-cv, 2024 WL 4691004, at *3 (2d Cir. Nov. 6, 2024) ("While leave to amend should generally be "freely given," there is no rule that every request to amend must be granted." (citations omitted)). Where a party

15

has failed to specify "how amendment would cure the pleading deficiencies in its complaint," leave need not be given. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

Here, Plaintiff has solely requested leave to amend "[i]n case the Court deems any part of the Complaint should be dismissed." Amoy Opp'n at 13-14; Best Food Opp'n at 16; Grand Food Opp'n at 16; KND Opp'n at 16. Plaintiff has already amended its Complaint once and failed to identify any additional facts or legal theories that it might assert in a second amended complaint if given leave to amend. Therefore, the Court declines to grant Plaintiff leave to amend. *See, e.g.*, *TechnoMarine*, 758 F.3d at 506 (affirming the district court's denial of leave to amend where the plaintiff "already amended its complaint once" and "entirely failed to specify how it could cure its pleading deficiencies"); *City of Pontiac Policemen's & Firemen's Retirement Sys.*, 752 F.3d 173, 188 (2d Cir. 2014) (same).

## CONCLUSION

For the foregoing reasons, the Amoy Defendants', Best Food Defendants', Grand Food's, and KND Defendants' respective motions to dismiss are granted as to Plaintiff's RICO claims. The Court declines to exercise supplemental jurisdiction over the remaining common law fraud claim.

The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

                                                           /s/
                                            ORELIA E. MERCHANT
                                            United States District Judge

November 5, 2025
Brooklyn, New York